JOHN H. WELLS *vs.* MADISON STRATTON & others.

## October Term, 1873.

RESULTING TRUST, WHEN AND HOW CREATED.—A resulting trust arises from the acts of the parties, whether accompanied by a parol agreement or not, and at the instant the deed is taken and the legal title vests, and no oral agreement, and no payments before or after, will otherwise create it.

PLEADING—ANSWER.—A reference in an answer to another answer in a different cause, adopting its statements without repeating them, does not make such statements a part of the answer.

EVIDENCE—ANSWER.—The answer of one defendant in another case, cannot, any more than his answer in the case on trial, be used as evidence against a co-defendant; it can only be used against the defendant himself, or to discredit him as a witness, after having given him an opportunity to explain.

EQUITIES, EQUAL, PRIOR.—The equity of a person who claims, upon a valuable consideration, under a partner in whom is the legal title, is fully equal to the equity of the creditor of a firm who is seeking to set up a resulting trust through the other partner, and if first in point of time must prevail.

*John Lellyett*, for complainant.
*Thos. H. Malone*, for defendants.

THE CHANCELLOR :—This bill was filed, on the 10th of May, 1872, by the complainant as a judgment-creditor of Stratton & Seymour, by judgment, recovered, on the 9th of March, 1872, against the defendant Madison Stratton as surviving partner of said firm, to subject to the satisfaction of his judgment lands claimed by the defendants John Taylor and A. J. Ballentine under mortgage or trust conveyances made by said Madison Stratton to secure debts for which he was liable, but which were not debts of the firm of Stratton & Seymour. The conveyance under which Balen-

tine claims is a mortgage of the 10th of July, 1869 ; and the conveyance under which Taylor claims is a deed of trust of the 13th of January, 1870. The several debts secured by these conveyances were pre-existing debts, and not created upon the faith of the conveyances. The bill is based solely upon the ground that the lands in controversy were the property of the firm of Stratton & Seymour, and that the complainant, as a creditor of the firm, has an equity or lien on the partnership property which entitles him to subject it as against the defendants claiming under one of the partners. Seymour is dead, and his widow and heirs are made parties defendant but not his personal representatives.

The firm of Stratton & Seymour, composed of Madison Stratton and Henry C. Seymour, was formed in 1857 for the purpose of carrying on a general grocery and produce business in Nashville, and continued in existence until dissolved by the death of Seymour in April, 1862. The business actually carried on seems to have been speculative and varied. At one time the firm appears to have engaged, with others, in manufacturing flour ; at another time at first alone, afterwards with others, in the manufacture of whiskey. The property in controversy was not needed or used for any of the partnership purposes, and, if partnership property at all, was bought or held purely for speculative purposes. It consists of parts of a 35 acre tract of unimproved land near Edgefield, bought in 1859, and afterwards divided into lots for sale, some of the lots being from time to time sold.

The bill alleges that the firm of Stratton & Seymour bought the land from H. J. Anderson, in the year 1859 ; that one of the partners of said firm, H. C. Seymour, was at the time individually very much indebted ; and for this reason, and at his request, the deed was made to M. Stratton alone ; that this was only done to conceal the property from the creditors of Seymour, and that said land was the partnership property of the firm.

The defendant Taylor denies that the land was bought for partnership purposes, or that it constituted any portion of the

assets of the firm of Stratton & Seymour, basing this assertion, however, principally on the fact that it was, at most, merely a joint purchase, having no connection with the business of the partnership.

Ballentine insists that the land was bought by Stratton alone, who took title in his own name intending to let Seymour have the one half of it, if he should ever be in a condition to hold property; and that Seymour never had any title legal or equitable to said property.

, Both defendants insist that the title was in Stratton and that they had no knowledge or information, until after the conveyances to them, that any one else had any interest in said property.

Stratton's own answer is that the land was not bought for the firm of Stratton & Seymour, but by him with a view of eventually giving Seymour an equal interest as tenant in common.

The pleadings if rigidly scrutinized, are somewhat loose and inaccurate in view of the facts developed by the evidence. The bill rests the interest of the firm, so far as its statement of fact goes, upon the supposed purchase by the firm; while the defendants deny the gravamen of the bill rather inferentially than directly. But the true equity of the bill is that the land in controversy was the property of the firm at the date of the conveyances for the benefit of the defendants, and the true equity of the defense is that the land was not the property of the firm at the time, or, if it were, that the deceased partner, if alive, and, consequently, his representatives and creditors, had no equity in the property then, and the equity of the defendants is the better equity. The pleadings are, I think, sufficient to test these issues; and if they were technically defective in this regard, I would not hesitate to permit all proper amendments necessary to this end.

In this view, the first question which presents itself is, were the lands in controversy the property of the firm of Stratton & Seymour?

The deed from Anderson, which is made an exhibit to the

bill, bears date the 1st of March, 1859, conveys the land to Madison Stratton alone, in consideration of $15,750, "the receipt of which," says the deed, "is hereby acknowledged." It is an absolute deed to Stratton, reciting the payment of the consideration money. There is no deed from Stratton to Seymour for any part of this land, or interest therein, nor is there any memorandum in writing signed by Stratton sufficient under the statute of frauds to give Seymour any title to, or interest in the land. There is, in fact, no memorandum in writing whatever, made or signed by Stratton, on the subject, in the lifetime of Seymour. Nor is there any such memorandum in writing since the death of Seymour, and prior to the conveyances for the benefit of the defendants.

The complainant insists, however, that the land was bought by the firm of Stratton & Seymour, and the title taken to Stratton alone in order to conceal the interest of Seymour from his individual creditors. That the consideration for the land was not paid as recited in the deed, but notes were given which were, in part at least, paid by the firm. And, that, consequently there is a resulting trust to the land in favor of the firm.

The only direct evidence upon this point consists of the testimony of Madison Stratton himself, whose deposition is taken by the defendants. He states that he bought the land from Anderson and gave his individual notes, in three instalments, for the purchase-money, with A. W. Johnson, Sr., and Morris & Stratton as his sureties. Johnson, either before or after the sale, he cannot recollect which, designed taking an interest with him, but after some eight or ten days deliberation declined. One of the notes given was assigned to Anthony Vanleer, and was renewed at maturity, and made payable to Russell Houston, administrator of Vanleer. This note was eventually paid by Morris & Stratton as sureties, and the amount with interest, some $8,600, was secured to them by mortgages on the individual property of Stratton, and Cheney, his son-in-law, and eventually paid by a sale of the mortgage property. One of the other notes Stratton

says was paid by him at the store of Hillman & Son in February, 1862, and the other "at our office," meaning, doubtless, the office of Stratton & Seymour. It does not appear from the testimony of this witness out of what funds these notes were paid. The witness says he does not recollect at what time he agreed that Seymour could have an interest in the land, whether it was before or after the purchase had been made, and adds: "He (Seymour) was insolvent at the time that I took him in business with me, and his interest (in the land) was on condition that his circumstances would enable him to pay for it." The legal title, he says, never was in Seymour, because he was largely in debt and unable to pay his liabilities. Upon cross-examination, the witness says he designed Seymour to have an interest in the 35 acres of land when in a condition to pay for it, and as such gave him credit by what was sold.

It is clear from this testimony, taken as true, that the purchase of the land from Anderson was made by Stratton alone. That the consideration consisted of his individual notes with sureties, which were accepted in satisfaction of the purchase-money, and that the interest of Seymour was merely in intention, and upon a condition which, so far as appears, never occurred or was complied with, the intention and condition both resting in parol.

A resulting trust arises from the acts of the parties whether accompanied by parol agreements or not. But the trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee. No oral agreements, and no payments before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself. Perry on Trusts, § 133, and cases cited. And proof of mere admissions of one that he purchased for another, without proof of some previous arrangement or advance of money by such other, is insufficient to create a resulting trust. Perry on Trusts, § 137; *Sidle* v. *Walter*, 5 Watts, 389. If the circumstances out of which the trust arises are denied in

the answer, the trust must be clearly alleged in the bill, not only in terms, but all the facts must be set out from which the trust is claimed to result. And the facts in all cases must be proved with great clearness and certainty. Perry on Trusts, § 137, and cases cited.

None of the facts necessary to create a resulting trust " at the moment the title passed," are clearly shown in this case. It does not clearly appear that the conditional oral agreement was made before or after the sale. The presumption is strong that it was after the title passed. For, no reason appears why the notes of the firm were not given if it were a partnership venture, nor why Seymour did not join in the execution of them, as he did afterwards in the renewal of the note to Russell Houston, administrator, as shown by the evidence of the complainant. The consideration consisted exclusively of the individual notes of Stratton, and the title was made to him.

The complainant relies, however, in this connection, upon the positive statement of Stratton that the tract in controversy was bought by Stratton and Seymour, made, under oath, in his answer filed on the 27th of February, 1871, to a bill exhibited in this court by the administrator, widow and heirs of Henry C. Seymour, against Stratton and the other defendants to this suit, for an account of the partnership business, and setting up a claim to the land now in controversy; and upon the same grounds relied on in this case. That answer is expressly referred to by Stratton by his answer in this case, and adopted as having been made after examination and refreshing his recollection. Such a reference, as a matter of pleading, is utterly nugatory, because in the first place, neither the court nor the parties can be required to look beyond the answer actually filed for a party's defense; and, in the second place, it was an attempt, in this instance, to secure the benefits of an answer under oath, where the oath was waived by the bill. But neither the answer in that case nor the answer in this case can be used as evidence in this case, except so far as they are made evidence by taking the deposition of the defendant himself and embodying their con-

tents in the deposition.   The statement of the former answer might be read against the defendant Stratton himself, but not against his co-defendants, as an admission, or to discredit him as a witness after having called his attention to the statements and given him the opportunity to explain.

In the cross-examination of Stratton in this case, his attention is called to the reference made by him to his former answer, and he is asked whether that answer was not pre pared with investigation and care, " and was it not just what you did then believe to be true."   His reply is : " It was, but having conversations with gentlemen familiar with some of the transactions recalls to my recollections some things that I had entirely forgotten."   And he has added : " As a matter of course I supposed that the statements were positively correct."   It will be noticed, his attention is not called to any particular statement in that answer, and he is not asked whether the same is not true.   The complainant has relied upon a general reference, which would be entitled to little consideration.   But if the general reference was really intended to call the attention of the witness to the particular statement touching the Anderson purchase, as, no doubt, it was, then the answer of the witness now is, in substance, " I did make that particular statement after investigation, and supposed it was positively correct, but having since had conversations with gentlemen familiar with some of the transactions my recollection is refreshed, and I now state the facts to be as deposed to in this deposition."   In that view, it becomes simply a question whether the court shall take the present statement, which is the only one in evidence, or discredit the witness because he had previously made a different statement under oath.   If the latter course be taken, then the evidence is entirely set aside, and there is no testimony from this witness on the subject.

Every day's experience in this court, nay, for that matter, every day's experience of every one of us, is sufficient to satisfy us how uncertain human memory is.   If we set aside testimony, or discredit witnesses, merely because there is a

discrepancy in their statements about the same matter, at different times, the courts would be compelled to guess at results far oftener than they do. The rule is, that where the court is satisfied that a witness has sworn falsely and corruptly on any single material point, it can no longer give credit to anything he may say. But change of recollection, if the court is satisfied of the integrity of the witness, is often a strong point in a witness' favor; for human nature prides itself too frequently on its consistency, and sticks to an error plainly demonstrated simply because it has once been openly made.

The witness' character for truth is in no way impeached. From the record I see no effort to impeach him, and no ground for it. As often happens in actual life, the recollection of long past events is freshened by dwelling upon them, and talking about them. The witness, it appears, has taken the benefit of the bankrupt law, and has no longer any pecuniary interest in the controversy. If he be an honest man, as the law presumes him to be until the contrary be proven, his only object can be to state the truth. And the statements themselves, manifestly not those of a swift witness for either side, carry on their face evidence of their honesty. I must take the testimony to be true.

If, however, the evidence were excluded, the complainant, so far as this branch of the case is concerned, would be in no better situation. The burden of proof is upon him to show facts and circumstances sufficient to create a resulting trust. As we have seen, the law requires clear proof of facts creating the trust at the moment the title passes. Exclude the testimony of Stratton, and there is no proof whatever.

The testimony of Stratton leaves it uncertain whether the understanding with Seymour was made before or after the title to the land passed. If after, then, of course, no resulting trust could arise. But the complainant has the right to show circumstances, or admissions of Stratton before the rights of his co-defendants arose, which are sufficient to satisfy the court that the agreement was made before the title passed.

He has shown, accordingly, that the thirty-five acres of land were shortly after the purchase fenced in, divided into lots, and known as Stratton & Seymour's addition to Nashville. He shows that the taxes on the land were assessed to Stratton & Seymour, and probably paid by the firm, and that the fencing and other expenditures on the land were also paid by the firm; or rather that there are entries in the firm books tending to show that such taxes and expenses were charged on the firm's books to real estate. He shows that in 1866 there was a sale of a portion of the lots on the premises, and that Seymour's wife and children joined in the deeds to the lots so sold. He also proves by entries in the firm books that real estate was charged at the expiration of just one year from the date of the deed, allowing two days for days of grace, with $5,565, which is exactly one-third of the purchase-money paid for the 35 acres with one year's interest; and that in February, 1862, or about three years from the purchase, real estate is again charged with $6,195, bills payable, meaning notes given or renewed, which is the exact amount of another third of the purchase-money with three years' interest. He also proves that the second note given for the land was renewed by the note to Houston, and that Seymour probably joined in the note as a co-maker.

These facts leave not a particle of doubt, if Stratton had not already admitted it, that there was a parol agreement made at some time, by which Seymour was to have an interest in the land, and that Stratton repeatedly, and perhaps continuously recognized the fact. Of course such an agreement would have been void under the statute of frauds, and could not be executed. But if it were made previous to, or contemporaneous with the passing of the title, the facts would raise a resulting trust, to the extent of the consideration actually paid by Seymour, or with his means.

It is obvious, however, that all these facts are equally consistent with the theory that the agreement was made after the title passed. The law is, that as a resulting trust may be shown by parol proof, as a presumption of law arising

out of the transaction, so the presumption may be rebutted by parol proof. As the resulting trust is mere matter of equitable presumption, it may be rebutted by facts that negative the presumption. Perry on Trusts, § 139. The execution of the individual notes of Stratton for the consideration of the land, is, in the absence of all explanatory testimony, conclusive that no person except Stratton was then interested in the trade. If, then, the presumptive evidence is entirely consistent with this conclusion, and there is no satisfactory evidence to the contrary, no resulting trust can be set up. The fact that Johnson at first contemplated being a co-purchaser with Stratton, demonstrates that the purchase was an individual enterprise of Stratton, and the weight of evidence is that he alone was interested until after the title passed.

The learned counsel for the complainant, in his full and able brief submitted upon the questions of law involved in this case, suggests that the holder of the legal title to land may hold the same in trust for another, or for himself and another, and that this may be shown by parol *always* in equity. He cites no authority, nor am I aware of any which sustains so sweeping a proposition. It may always be done where the law raises a trust from the facts. It can never be done where the trusts rest upon a mere parol agreement. Perry, § 137. The statute of frauds is as obligatory upon a court of equity as a court of law. The law upon this subject is thus laid down by Mr. Perry: "No trust can be set up by mere parol agreement (§ 79), or, as has been said, no trust results from the breach of a mere parol contract." § 134. And see *Parker* v. *Bragg*, 11 Hum. 212.

The learned counsel seems also to think that the fact that the transaction was a partnership transaction, takes the case out of the general rule, and changes the law. But I do not so understand the authorities. I am not aware of any case, nor has he cited any, where real estate has been held to be partnership property, upon the claim of a resulting or other trust, under other circumstances than such as would have

created a trust between the parties occupying a fiduciary relation to each other, if the partnership relation had not existed. If property be bought with partnership funds, a trust results no matter how the title is taken. But if land be bought by one partner alone who takes the title to himself, I know of no law by which that land can become partnership property, except by writing. If, after having thus acquired title, he use the partnership money to pay for the land, the money may, under some circumstances, such as are neither averred nor shown to exist in this case, be followed into the land, but no resulting trust can arise. Perry on Trusts, § 133. The case of *Boyers* v. *Elliott*, 7 Hum. 204, was where one partner, the owner of a tract of land, at the time of the formation of the partnership for erecting buildings and carrying on a manufacturing business on that land, conveyed by deed an undivided half of the land to his copartners, and afterwards conveyed his interest in the land to secure an individual debt of his own, and became insolvent. The contest between the other partner and the mortgagee was, is the land partnership property, or were the partners mere tenants in common. If it were partnership property the solvent partner had a lien upon it for the payment of partnership debts. If it were not partnership property, the mortgagee took the mortgagor's undivided interest as tenant in common. There was no controversy about the title, that was clearly in the several parties in equal moieties. The only question was, was it partnership property. The question is precisely the same as is raised by the answers in this case upon the supposition that the original purchase was made from Anderson by Stratton & Seymour. In that event, say the defendants, the parties were tenants in common, and the property was not partnership property. The deed in the *Boyers case*, the resulting trust in this case upon the supposition made, created only a tenancy in common. Something more is required to make the property partnership property. In the *Boyers case*, an entry on the books of the partnership by the original owner of the land himself

charging the firm with a consideration as for the entire tract, was held sufficient evidence in itself to show the land was partnership property. It was not adjudged that any writing was absolutely necessary for this purpose. Perhaps the fact that the partnership business was carried on in a building erected on land held in common by the partners, or that the land thus held in common was used for partnership purposes, might be sufficient. It may be that the entries on the books of the payment of the purchase-money of land so used, or such entries as are produced in this case, would be sufficient for the purpose. But that a man can be deprived of the title to his land, without any memorandum in writing signed by him, merely because some of the payments for it, or expenditures on it, are charged on the firm books, or the property is used for partnership purposes, is another question altogether.

It must be borne in mind that the claim set up by this bill is *stricti juris* after such a lapse of time and the acquiring of rights by third persons on the faith of the legal title. All the authorities agree that the claim should be clearly made out.

The complainant has failed, therefore, to show to the satisfaction of the court that the property he seeks to reach ever was partnership property, in such way as to bind third persons taking title from Stratton alone. The equity of Seymour was an equity which the courts could not enforce except with the assent of Stratton, and which third parties were not required to notice. But the result would be the same if he had actually satisfied the court that the original purchase was made by Stratton & Seymour as partners. Stratton having the legal title could not, in a court of equity, be deprived of it until re-imbursed all his expenditures for the firm. It is necessary for any person setting up a trust to show that the purchase money was paid out of partnership funds, or by the partners equally; for it is the payment of the money which creates the trust. It is clearly shown by the proof that one of the notes given for the purchase-money was paid by Strat-

ton, and not by the firm. It appears, brought out by the complainant himself, that another note was paid in February, 1862, by Stratton. The remaining note, the one first due in point of time, seems to have been paid at the partnership office, and, perhaps, out of partnership assets. This leaves the trust to rest upon a small part of the original consideration. But the proof is that the only capital put into the firm was put in by Stratton, that Seymour had no means of support except from the profits of the business, and the only testimony as to the condition of the firm is, that it was insolvent from the start. The weight of evidence is, therefore, that the consideration was in fact paid by Stratton.

All that Seymour himself, if living, and, of course, his representatives, or creditors working out an equity through him, could in any event claim, would be that Stratton should account for the value of the land in a partnership settlement. Stratton himself is estopped to ' dispute the title of those claiming under him by his deeds, and the representatives of the other partner would be estopped in equity by having received the value of the land in the payment of partnership debts. Stratton in his deposition claims that the balance due him upon settlement would be thirty thousand dollars, and that he actually settled upon the admission of a debt due to him of $10,000. The complainant has himself introduced and read the proceedings in the case of *A. M. Wingfield, Administrator, & others* v. *M. Stratton & others*, being a bill filed in this court, on the 27th of August, 1870, by the administrator, widow and heirs of Henry C. Seymour against Stratton and the defendants to this bill, for the express purpose of having a partnership settlement, and claiming the very land now in controversy, and upon the same grounds precisely. Such proceedings were had in that cause that a partnership account was ordered, and the complainants dismissed their bill as to all the defendants except Stratton, and submitted to a decree in his favor against the administrator of Seymour as upon the partnership account for $10,000.

This settlement went, of course, upon the basis of the land in controversy being so far partnership property that Stratton was charged with it, for the bill alleges that it was treated as the property of both parties, and Stratton admits it in his answer. Such a settlement seems to me conclusive upon the creditors of the firm, unless its good faith is attacked, or it is shown that complainant acquired rights in the specific property before the balance of account was shown in favor of Stratton.

The complainant's rights are a mere equity to subject the property in controversy as partnership property. My own opinion is that he has no rights except such as he can work out through the partners. But, if he have, his right in this case is a mere equity. But the defendants Ballentine and Taylor have each also an equity which is prior in point of time. The lots which Ballentine claims were sold in 1866 to A. W. Johnson, Jr., at public sale, and a deed made to him by Stratton and the widow and heirs of Seymour, retaining a lien for the purchase-money. Johnson afterwards sold and conveyed the lots to Stratton for the same consideration, and Stratton charged himself with the consideration, in which proceedings, which took place long before the filing of complainant's bill, the representatives of Seymour have acquiesced. And, if they had not acquiesced, I see no reason for questioning the validity of the proceedings either at their instance, or at the instance of creditors.

The defendant Taylor avers and proves that, in consideration of the mortgage to him, he gave up a recognized right to a mortgage upon a valuable tract of land which was, on the faith of such release, assigned to secure an indebtedness of Stratton & Seymour of over $33,000, $8,000 of which debt grew out of the note to Houston administrator, and was a part of the consideration for the Anderson land. His equity is fully equal to that of complainant and prior in time.

Dismiss the bill with costs.